Luther Stephen **CALHOON**, a Juvenile,
Appellant,

v.

The **STATE** of Oklahoma,
Appellee.

No. J–76–175.

Court of Criminal Appeals of Oklahoma.

April 13, 1976.

Larry Derryberry, Atty. Gen., Oklahoma City, John Russell, Dist. Atty., Stilwell, for State.

Kenneth C. Ellison, Tulsa, for appellant. pellant.

## OPINION

BLISS, Judge:

This is an appeal by the above named juvenile, Luther Stephen Calhoon, a male child, who was born May 17, 1961, from an order entered by the Juvenile Division of the District Court in and for Adair County, Oklahoma, on the 11th day of February, 1976, in Case No. JFJ–75–42, in which order the Juvenile Division of the District Court waived or relinquished its jurisdiction over the juvenile and certified him to stand trial in the trial division of said court for the alleged crime of Murder in the First Degree, as empowered by 10 O.S.Supp. 1975, § 1112. The appeal to this Court is authorized by and has been timely filed under 10 O.S.Supp.1975, § 1123 and Rule VIII of this Court, adopted and effective July 3, 1975.

The State of Oklahoma instituted the proceedings against the juvenile by filing a verified petition in the Juvenile Division of the District Court in said case numbered JFJ–75–42 on October 1, 1975, as required by 10 O.S.Supp.1975, § 1103, alleging, among other things, as follows:

"That the above named child is within the purview of the Juvenile Code because of the following facts, to-wit:

"That the above named child did on or about the 30th day of September, 1975, commit the crime of Murder, First De-

gree, that is to say that the aforesaid child did unlawfully, wilfully, and feloniously, without authority of law and with a premeditated design to effect the death of one ORA MAYE ETHERIDGE, the said child did while being then and there engaged in committing or attempting to commit the crime of Armed Robbery, did kill the said ORA MAYE ETHERIDGE, by means of shooting her with a .22 caliber rifle and by striking and beating her about the head with said rifle, causing mortal wounds in the body of the said Ora Maye Etheridge from which mortal wounds the said Ora Maye Etheridge did lanquish and die,"

and requested the court to certify the juvenile to stand trial as an adult.

The court held its first hearing on the petition on November 7, 1975, at which the State appeared by its Assistant District Attorney and the said juvenile appeared in person, with his parents, Mr. and Mrs. George Calhoon, and his court appointed attorney, Mr. S. Daniel George. The facts developed at that hearing from the testimony of sworn witness, a Mrs. Rose Hembree and four peace officers, are substantially as follows:

Mrs. Ora Mae Etheridge, an elderly widow, lived alone in her home in Stilwell, Adair County, Oklahoma, and was next door neighbor to the parents of the juvenile, Mr. and Mrs. George Calhoon. About 5:30 p.m., Tuesday, September 30, 1975, Mrs. Hembree, a friend of Mrs. Etheridge, called at the Etheridge home; she found the front door ajar and, being unable to get a response to ringing the door bell and her knocking on the door, she entered the home and immediately noticed the body of Mrs. Etheridge lying on the floor with indications of blood near her mouth. Mrs. Hembree retreated from the house and caused police officers to be notified, who arrived promptly.

The officers found Mrs. Etheridge to be dead, having been beaten about the head and having been shot with a .22 caliber bullet, from which death had resulted. In a chair near her head was her open purse, the contents of which had been "shuffled around".

The investigation led next door to the Calhoon home and the officers inquired of Mr. Calhoon, father of the juvenile, if he had information about a broken gun in his home. He said he did have and invited the officers in and led them to his son's room upstairs and showed them a .22 caliber single shot Remington rifle with a broken stock, separated from the barrel. Thereafter, the juvenile returned from a football game which he had attended; and then, after giving the Miranda warnings to the parents and the juvenile, the officers interrogated them, each in the presence of the other, the parents assisting in the interrogation of their son.

At first the juvenile told the officers that some 'man had borrowed his gun and paid "him to keep his mouth shut." He then told, in substance, that he had gone to Mrs. Etheridge's alone with his rifle, shot her, killed her and he did not know why and could not remember all that had happened. Later in the investigation, as one of the officers testified, the juvenile gave him ten (10) Five Dollar ($5.00) bills which he said he found in the Etheridge house, "that he stumbled over a rug in the living room and found this money lying on the rug."

The next morning one of the officers went back to the Etheridge home and found an expended .22 caliber bullet in a foam rubber cushion on the divan in the front room where the body was found the evening before. A ballistic report, properly admitted in evidence by stipulation, reflected the bullet had been fired from the rifle found in the juvenile's room. An autopsy report, admitted into evidence by agreement, reflected that Mrs. Etheridge's death was caused by a .22 caliber bullet wound in the stomach area, the bullet having entered the left side and exited the right side, and by massive beating to the head. It was the theory of the State that she was sitting on the divan when she was shot.

The initial hearing was concluded with this evidence, but with the understanding and agreement of the parties that an additional hearing or hearings would be held in reference to the certification aspects of the proceedings. Thereupon, the court announced its findings from the evidence presented. The court found and ordered there were reasonable grounds to believe the crime of Murder in the First Degree as charged in the petition had been committed and reasonable grounds to believe the juvenile, Luther Stephen Calhoon, committed the crime. This constitutes positive finding by the court of the prosecutive merit of the proceedings.

The next hearing was had before the Juvenile Division of the court by agreement on January 26, 1976, at which time the State appeared by Mr. Rex Earl Starr, Assistant District Attorney, and the juvenile in person and with his parents and by employed counsel, Mr. Larry B. Ferguson and Mr. Kenneth C. Ellison, attorneys at law, Tulsa, Oklahoma, Mr. S. Daniel George, the court appointed attorney, having agreeably withdrawn as counsel for the juvenile. It is to be noted that this hearing is subsequent to our opinion in *J.T.P. v. State,* Okl.Cr., 544 P.2d 1270 (1975) and to which the court referred at the conclusion of the hearing.

The State called as its medical expert one doctor D, whose specialty is psychology and who has served as a clinical psychologist for twelve years at Eastern State Hospital at Vinita, Oklahoma, and who had examined, tested and observed the juvenile for a period of approximately nine (9) days at said institution to which he had been committed by the District Court on October 1, 1975, for mental observation for a period not to exceed sixty days. The record reflects that he was ordered released to the Adair County authorities on October 9, 1975, as able accurately to distinguish between right and wrong and capable of advising legal counsel in his own defense, and such was the testimony of doctor D, who testified further the juve-

nile is not mentally retarded but of average intelligence, had "a non-psychotic diagnosis . . . that it fell under the classification of personality disorder, and it was schizoid personality." On cross-examination he testified the juvenile "has possibility of some sociopathic tendencies and budding psychopathy," phases of which bring in society and transgressions against society.

The next witness for the State, a Mr. Charles Caywood, testified that he was employed by the Department of Institutions, Social and Rehabilitative Services of Oklahoma, and had been for several years and was District Supervisor over a ten county area, including Adair County. He testified in great detail as to the institutions and facilities available and their utilization for those adjudged and committed as delinquents.

The next witnesses for the State were four (4) school teachers from the Junior High School in Stilwell, Adair County, Oklahoma, who had taught the juvenile in their classes. It appears he was in the eighth grade in the school year 1974–1975. Overall, the juvenile attended school with reasonable regularity, had no particular behavioral problems and was a student of less than ordinary ability.

The juvenile called one witness, doctor W from Tulsa, whose specialty is psychiatry with seven or eight years experience in private practice. She had reviewed the tests given the juvenile at the hospital in Vinita and had conducted her own examination of him. Her testimony was he is aware of right and wrong but is unable to evaluate the consequences, although he is mentally the age of fourteen, and is able to assist his attorneys in his own defense. She further testified in her opinion the juvenile could be rehabilitated within the programs and facilities of the Department of Public Welfare within a period of six months to a year, two years at the most.

Both parties rested, and agreeable to them, the court took the matter under advisement and requested their further ap-

pearances at a subsequent and final hearing.

The hearing was held February 6, 1976, with the same appearances; however, the court had requested the reappearance of the said doctor D, doctor W and the witness Caywood and had present for the first time witnesses Sidebottom and Harris, who were present to testify. No objection was made by either party, except the juvenile objected to those who had not previously testified. The court called and examined the witnesses and permitted cross-examination by the respective counsel. .

The purpose of the court at this hearing is ever so clear. Primarily the court wanted to know from the expert witnesses, "From all your testing, interviewing and from all your professional training, what is your opinion as to whether this juvenile, Luther Stephen Calhoon, is a fit subject for rehabilitation by the facilities and programs available to the juvenile court?"

Doctor D, the State's witness, approached the answer with considerable caution and uncertainty, saying it would be most difficult to rehabilitate the juvenile in a short period of time, adding, "It's a long term sort of type diagnosis that he has." He had reservations as to whether recognized treatment "can actually get at the core of the difficulty."

Doctor W, the juvenile's witness, was positive in her testimony that he could be rehabilitated within the juvenile programs and facilities available to· the court; that he does not have criminal tendencies; and would not be a threat to society during the rehabilitation period.

The witness Caywood, originally called by the State, stated he had never interviewed the juvenile, but had general information about the case. He stated he could give no answer to the question directed to him by the court, "Is Luther Calhoon a fit subject for rehabilitation by the facilities and programs available to the juvenile court?"

The witness Sidebottom testified he was a jailer at the Adair County jail and had observed the juvenile since his incarceration last September. On one occasion the juvenile had torn strips from a blanket and tied his cell mate's hands and legs behind him, requiring assistance to free himself. Another cell mate on a different occasion had asked to be transferred from the cell of the juvenile and to be treated as an adult prisoner.

The concluding witness was one Harris, a trustee in the courty jail, and he too testified as to the alleged incident of the juvenile's tying his cell mate's hands and feet behind him and incidents of tearing plaster from the cell walls and throwing water on others.

Both parties rested, and on February 17, 1976, the Juvenile Judge caused to be filed his written finding and order, dated February 11, 1976, in pertinent part as follows:

"1. The Court finds from the evidence offered that there is reasonable grounds to believe the Crime of Murder, First Degree was committed and reasonable grounds to believe the Juvenile herein committed the same.

"2. Having determined the first issue the Court now affronts the issue of the appropriateness of Juvenile or Adult treatment for the Child. The Court finds that the Juvenile is of average intelligence and has sufficient maturity to know right from wrong. That knowing right from wrong, the Juvenile is accountable for his acts. The Court further finds the Juvenile is of 14 years of age and is without any significant mental disorder."

"3. The Court further finds that the Juvenile Facilities and Programs available to the Court are reasonable but specifically finds the said Luther Stephen Calhoun will not fit within the Juvenile System and cannot be handled or controlled within it and is unfit for rehabilitation therein.

"The Court therefore finds as a Juvenile Court, it should relinguish Jurisdiction over the said Luther Stephen Calhoun and certify him to the Trial Division of

the District Court of Adair County to stand trial for the crime alleged in the petition, Murder in the First Degree, as an adult.

"IT IS THE FURTHER ORDERED that the above finds are hereby made the Judgment and Order of the Court and it so ordered.

"Dated at Stilwell, Oklahoma this 11th day of February, 1976."

This juvenile, as the appellant, seeks reversal of this order certifying him to stand trial in the trial division of the District Court, and sets forth one assignment of error in his brief submitted in support of his Petition in Error. The assignment of error is:

"CAN A JUVENILE BE CERTIFIED TO BE TRIED AS AN ADULT WHEN THE EVIDENCE PROVED HE HAD NO PAST CRIMINAL RECORD AND THE JUVENILE COURT HAD SERVICES AND FACILITIES AVAILABLE TO REHABILITATE HIM WHILE HE WAS OUT OF THE GENERAL PUBLIC AND THE JUVENILE'S ASSOCIATE WAS NOT CERTIFIED AS AN ADULT?"

True, the record does not reflect any prior criminal or juvenile record on the part of the juvenile. Further, it does not reflect that any person has been charged by petition or otherwise as having been an associate of the juvenile in the alleged crime, although the testimony of one officer in relating an admission of the juvenile referred to another as a lookout and that the juvenile gave him twenty dollars. But assuming this to be true and that the alleged associate was not certified to stand trial as an adult but retained within the juvenile system or program, we fail to understand in what manner this should alter our full consideration and final disposition of the case before us.

The thrust of the assignment of error is actually calculated to challenge the Juvenile Judge's finding from the evidence that the juvenile was not and is not amenable to facilities, programs and services available to the juvenile court and that the juvenile could not be rehabilitated therein. The juvenile asserts in his brief there is no evidence in the record to warrant this finding.

The Juvenile Codes of the State of Oklahoma contemplates that a child [any person under the age of eighteen (18) years] who is charged with having violated any state statute shall not be tried in a criminal action but in a juvenile proceeding in accordance with the juvenile act. Title 10 O.S.Supp.1975, § 1112(a). Section (b) of the statute provides:

"(b) If a child is charged with delinquency as a result of an offense which would be a felony if committed by an adult, the court shall consider the following guidelines:

"1. The seriousness of the alleged offense to the community;

"2. Whether the alleged offense was committed in an agressive, violent, premeditated or willful manner;

"3. Whether the offense was against persons or property, greater weight being given to offenses against persons especially if personal injury resulted;

"4. Whether there is prosecutive merit to the complaint;

"5. The desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults;

"6. The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living;

"7. The record and previous history of the juvenile, including previous contacts with community agencies, law enforcement agencies, schools, juvenile courts and other jurisdictions, prior periods of probation or prior commitments to juvenile institutions; and

"8. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile

if he is found to be guilty of the alleged offense, by the use of procedures and facilities currently available to the juvenile court;

"and after full investigation and a preliminary hearing, may in its discretion continue the juvenile proeeding, *or it may certify such child capable of knowing right from wrong, and to be held accountable for his acts, for proper criminal proceedings to any other division of the court which would have trial jurisdiction of such offense if committed by an adult.*" (Emphasis Added)

This Court considered this statute in the recent case of *J.T.P. v. State*, Okl.Cr., 544 P.2d 1270, at 1279 and held:

"It is, of course, not necessary that the court's consideration be arithmetically proportioned among these eight factors or that each of the statutory factors be clearly decided against the claim of the child. We interpret Section 1112(b) to require two ultimate findings as prerequisite to a valid certification order. The first of these is a finding that there is prosecutive merit to the complaint, which statutory phrase we construe to require a finding that a crime has been committed and that there is probable cause to believe that the accused child committed it. The second ultimate finding required is that the child is not a fit subject for rehabilitation by the facilities and programs available to the juvenile court.

"Unlike that of certain other jurisdictions, Oklahoma's Juvenile Court Act *does not exclude major crimes from Juvenile Court jurisdiction.* There is, therefore, no presumption built into the Act that a child who has committed a very serious offense is not receptive to rehabilitative treatment."

This Court stated further in the case:

"The decision that a child is unfit for rehabilitation with the juvenile system is one within the discretion of the juvenile judge. That discretion, however, must be exercised within the bounds of due process which requires not only the pro-

cedural regularity which we have discussed, but *substantial evidence* against the child's claim to the benefits of juvenile treatment." (Emphasis Added)

The three (3) hearings held by the juvenile court above referred to were held within the requirements of due process. No error is asserted as to procedure, fairness, or the competency of the evidence introduced, which reached, directly or indirectly, each and all of the eight (8) factors above mentioned.

Certainly the juvenile court's findings from the evidence that the crime alleged had been committed and reasonable cause to believe that the juvenile committed it cannot be questioned. Therefore, prosecutive merit of the complaint was clearly established. We observe, also, that the alleged statement of the juvenile to the officers that he did not know why he killed Mrs. Etheridge and that he found the money testified about by accidentally stumbling over a rug, possibly creates an issue of Murder in the Second Degree.

The remaining prerequisite finding that the juvenile is not a fit subject for rehabilitation within the juvenile system must be founded upon *substantial evidence*. The juvenile says it is not, because the expert evidence does not say it. One expert, as shown above, that of the juvenile, positively testified the juvenile was amenable. The other two did not say he was or was not amenable.

 The Juvenile Judge, in reaching the ultimate findings in the case, was not required to give exclusive, controlling effect to the testimony of the experts, or either of them, but was required to weigh the same along with all the other evidence in the case. *Stidham v. State*, Okl.Cr., 507 P.2d 1312 (1973).

We find this definition of "substantial evidence" in *Corbin v. United States*, 10 Cir., 253 F.2d 646, at 649 (1958), as follows:

"Substantial evidence is more than a scintilla. It must do more than create a

suspicion of the existence of the fact to be established. We must consider the case as a whole and not piecemeal. The lines of proof must be considered together, not separately. Even if each line of proof taken by itself is of insufficient probative force, the conclusion does not necessarily follow that the proof taken as a whole is insufficient. The lines of proof interweave and support each other."

No doubt such controlling principles were applied by the Juvenile Judge in making his findings and entering his certification order above shown. The record in this case warrants the discretion exercised by the judge, it was reasonable and justified. The order of the juvenile court in surrendering its jurisdiction and certifying the juvenile to the trial division of the District Court for proceedings as an adult is AFFIRMED, and the trial division of the District Court is instructed to proceed with proper criminal proceedings in the case, bearing in mind that the juvenile "shall be entitled to a preliminary hearing or examination prior to arraignment, unless properly waived."

BRETT, P. J., and BUSSEY, J., concur.