Charles Henry TERRELL,
Appellant,

v.

The STATE of Oklahoma,
Appellee.

No. J–76–370.

Court of Criminal Appeals of Oklahoma.

June 28, 1976.

S. Daniel George, Sallisaw, for appellant.

John W. Russell Jr., Dist Atty., John Q. Adams, Asst. Dist. Atty., for appellee.

## MEMORANDUM OPINION

BUSSEY, Judge:

This is an appeal by Charles Henry Terrell, a juvenile, hereinafter referred to as Appellant, a male child who was born November 1, 1958, from an Order entered by the Juvenile Division of the Sequoyah County District Court on the 14th day of April, 1976, in Case No. JF–76–15, in which Order the Juvenile Division of the District Court waived or relinquished its jurisdiction over the juvenile and certified him to stand trial in the trial division of said court for the alleged offense of Assault with Intent to Rape, as empowered by 10 O.S.Supp.1975, § 1112. Appellant, under the provisions of 10 O.S.Supp.1975, § 1123 and Rule VIII of this Court, has perfected a timely appeal to this Court.

Briefly stated, the facts adduced at the Certification Hearing are as follows:

Cleta Jones testified she was fifteen years of age and lived at Gore, Oklahoma on February 28, 1976, at which time she was at home alone as her parents were at the church they attend. She was sitting in a recliner reading the newspaper when she looked out and observed the Appellant coming to the door. "I just started screaming because it had happened before, and I just couldn't think to run or anything." [Tr. 21] The Appellant then kicked in the door, busting the facing, as the door was locked. He then dragged her, while she was screaming, to the bath-

room. Appellant then started choking her and pulling down her panties. The witness was then able to get up from the floor and at this time Appellant pulled her in to the bedroom and finished pulling off her panties. Appellant then pulled his pants down and told her to spread her legs. She refused and Appellant told here he was going to kill her and "he jumped up and down and everything on my stomach." [Tr. 22] The witness then tried to escape by kicking out a window, but was pulled back inside by the Appellant, who then started beating her on the back and the back of her head. In an attempt to scare the Appellant, she said, "Charley, mama and daddy's coming." [Tr. 22] Appellant then told her to take her blouse off. She refused and as the Appellant went into the bathroom she ran out the front door. Thereafter the Sheriff's Office was called. This witness finally testified that the Appellant was her first cousin.

Cleatis Jones testified he was Cleta Jones' father and then testified as to what he observed upon arriving home from church on February 28, 1976. He observed his daughter run out of the house with only her blouse and panties on, with the front of her panties being torn. His daughter was bleeding at the ear and mouth. Upon going into the house he observed the door had been kicked open and a window was broken in his daughter's bedroom. Thereafter, the Sheriff was called, and his daughter was taken to the hospital.

Don Maybary testified he was employed as Chief of Police of Gore, Oklahoma. As there was no Deputy Sheriff available to go to the Jones' residence, he went to investigate the complaint regarding the Appellant. Chief Maybary then testified to the facts and circumstances surrounding the arrest of the Appellant. Thereafter, Appellant's Demurrer to the Evidence was overruled as to prosecutive merit.

Darlene Terrell then testified in behalf of the Appellant. She testified she was the mother of the Appellant and seven oth-

er children, and that Appellant was seventeen years old. Mrs. Terrell finally testified to certain discrepancies concerning the testimony of Cleta Jones.

Marcia Webb was then called to testify in behalf of the State. Miss Webb testified that she was a Probation and Parole Officer for the State Welfare Department. She identified State's Exhibit No. 1 as being a certification study, prepared by her regarding the Appellant. The same was then admitted into evidence.

Thereafter, the Court made a finding that there was prosecutive merit to the case.

The State then proceeded with the psychological evaluation portion of the case. Dr. R. D. Garcia testified he was a psychiatrist at Eastern State Hospital, Vinita, Oklahoma. The Appellant was under his observation between March 2, 1976 and March 8, 1976. During this period he administered certain psychological tests. As a result of these tests he gave the Appellant an IQ rating of 86, that being a "dull normal" range. Dr. Garcia further found no signs of mental illness. In his opinion the Appellant was a typical human being of his age behavior, emotionally and mentally, and in his opinion it would be doubtful that the Appellant's maturity and sophistication would change between the present time until he was eighteen years old (approximately six months). Finally, the doctor testified that in his opinion there was nothing about the Appellant to rehabilitate as "he has not really begun to be so bad yet that he has to be rehabilitated." [Tr. 83]

Thereafter, the trial court found from all the evidence that the Appellant was not amenable to the facilities, programs and services available to the Juvenile Court and that he could not be rehabilitated therein.

Appellant concedes that the trial court was correct in finding sufficient evidence of prosecutive merit of the case; however, under two assignments of error, he does challenge the trial court's finding from the evidence that Appellant was not amenable to juvenile facilities.

The Juvenile Codes of the State of Oklahoma contemplate that a child (any person under the age of eighteen (18) years), who is charged with having violated any state statute shall not be tried in a criminal action but in a juvenile proceeding in accordance with the juvenile act. Title 10 O.S.Supp.1975, § 1112(a). Section (b) of the statute provides:

"(b) If a child is charged with delinquency as a result of an offense which would be a felony if committed by an adult, the court shall consider the following guidelines:

"1. The seriousness of the alleged offense to the community;

"2. Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;

"3. Whether the offense was against persons of property, greater weight being given to offenses against persons especially if personal injury resulted;

"4. Whether there is prosecutive merit to the complaint;

"5. The desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults;

"6. The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living;

"7. The record and previous history of the juvenile, including previous contacts with community agencies, law enforcement agencies, schools, juvenile courts and other jurisdictions, prior periods of probation or prior commitments to juvenile institutions; and

"8. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile if he is found to be guilty of the alleged

offense, by the use of procedures and facilities currently available to the juvenile court;

"and after full investigation and a preliminary hearing, may in its discretion continue the juvenile proceeding, *or it may certify such child capable of knowing right from wrong, and to be held accountable for his acts, for proper criminal proceedings to any other division of the court which would have trial jurisdiction of such offense if committed by an adult.*" [Emphasis added]

This Court, in the case of *Calhoon, a Juvenile v. State,* (Vol. 47 O.B.A.J. 892), Okl.Cr., 548 P.2d 1037 (1976), in ruling on a similar issue, stated:

"The Juvenile Judge, in reaching the ultimate findings in the case, was not required to give exclusive, controlling effect to the testimony of the experts, or either of them, but was required to weigh the same along with all the other evidence in the case. *Stidham v. State,* Okl.Cr., 507 P.2d 1312 (1973).

"We find this definition of 'substantial evidence' in *Corbin v. United States,* 253 F.2d 646, 649 (1958), as follows:

'Substantial evidence is more than a scintilla. It must do more than create a suspicion of the existence of the fact to be established. We must consider the case as a whole and not piecemeal. The lines of proof must be considered together, not separately. Even if each line of proof taken by itself is of insufficient probative force, the conclusion does not necessarily follow that the proof taken as a whole is insufficient. The lines of proof interweave and support each other.' "

■ The finding that a child is not amenable to juvenile facilities and unfit for rehabilitation within the juvenile system is a decision within the discretion of the juvenile judge, but said decision must be based on substantial evidence against the child's claim to the benefit of juvenile treatment. See *J.T.P. v. State,* Okl.Cr., 544 P.2d 1270 (1975).

■ It is our opinion that based on all the evidence presented: age of Appellant, seriousness of the crime, and the aggravating circumstances of the crime, that the trial judge's Order of Certification was reasonable and justified, and not an abuse of discretion.

The Order appealed from is therefore, AFFIRMED.

BRETT, P. J., and BLISS, J., concur.