**In the Matter of Billy Ray SANDERS,**

**In re James Otis DODSON.**

**Nos. J–77–281, J–77–282.**

Court of Criminal Appeals of Oklahoma.

May 16, 1977.

Paul D. Brunton, Tulsa, for appellant Billy Ray Sanders.

Ronald H. Mook, Tulsa, for appellants, Billy Ray Sanders and James Otis Dodson.

## OPINION

BRETT, Judge:

Appellant, Billy Ray Sanders and James Otis Dodson, appeal from an order of the Tulsa County District Court, Juvenile Division, Joe Jennings, Judge, certifying them to stand trial as adults for criminal prosecution for the alleged offense of Murder in the Second Degree. The two appeals are joined under Rule No. 2.5 of the Rules of this Court.

■ As was stated in *J.T.P. v. State*, Okl.Cr., 544 P.2d 1270 (1975), and in the cases following, in order to certify juveniles to stand trial as adults, the juvenile judge must make two findings of fact. First, the judge must find that there was prosecutive merit to the complaint; that is, that a crime has been committed and that there is probable cause to believe that the accused juvenile committed the crime. Second, the judge must find that the child is not a fit subject for rehabilitation by the facilities and programs available to the juvenile court. The defendants here make no contention that the State failed to show prosecutive merit. Therefore, for the purposes of this appeal it is sufficient to say that the evidence at the certification hearing indicates that the two defendants brutally beat the victim, cut his throat, and threw him over the Bird Creek Bridge on 96th Street in Tulsa County.

Both appellants assert as their single assignment of error that the lower court erred in finding that the juveniles were not amenable to treatment by the facilities of the Juvenile System, thereby denying them due process and equal protection of the laws. The court received into evidence the results of various psychological tests which were conducted on both of the defendants and statements about the defendants from the court psychologist, Dr. John Hickman, Ph.D. In describing the defendant Dodson, Dr. Hickman stated that in his opinion Dodson knew the difference between right and wrong, was of average intelligence, and had a passive aggressive personality. In describing defendant Sanders, Dr. Hickman stated that he thought Sanders knew the difference between right and wrong, was antisocial, was seriously disturbed, and was dangerous both to himself and to others. He stated that although Sanders was in the bright average range of intelligence, he re-

acted in a hostile, aggressive manner to any aggravation from others. He stated that his prognosis for the defendant Sanders was "guarded to poor" and that it seemed likely that the defendant Sanders would be involved in violence in the future, particularly if he were aggravated by others. The court took judicial notice of the fact that defendant Sanders had been committed previously to Helena School for Boys for his commission of an armed robbery. According to the record, the defendant Dodson had no previous contacts with law enforcement authorities. The record reflects that defendant Dodson is 17-years-old, and the record is unclear whether defendant Sanders is 16-years-old or 17-years-old.

In discussing his reasons for certifying the two defendants, the juvenile court judge said:

". . . As long as there is a realistic program that will provide rehabilitation for the juvenile and protection to the public, then that person should be handled as a juvenile regardless of whether he's 13 or lacks ond (sic) day being 18."

He went on to discuss the rehabilitation programs which would be available to the two defendants as juveniles. First, he said that there was an outpatient care and treatment program at Children's Medical Center which was a good program, but that giving thought to public protection in a case such as this one, the judge did not consider it a realistic treatment program. The second possible treatment program was the Juvenile System's Lakeside Home. However, the judge stated that that home was set up to deal with juveniles who primarily had family oriented problems. He said that it was not a secure setting and was not staffed by personnel who were equipped to handle juveniles who posed a threat to the staff, the public or other juveniles involved in the program. The judge then discussed placing the defendants with the Department of Institutions, Social and Rehabilitative Services, noting that the defendant Sanders had been sent there previously for committing an armed robbery and had been released after four months, after apparent-ly receiving no rehabilitative treatment. He said that considering the defendant Sander's case the boy needed more than a minimal program. With regard to the defendant Dodson, the trial court stated that it was the policy of the Department of Institutions, Social and Rehabilitative Services to dismiss juveniles in their charge at or about the time they reached the age of 18 years. Considering that defendant Dodson was within three months of attaining age 18, the judge said that realistically there was no effective rehabilitative program available to the defendant.

According to the defendants, they were denied due process of law and equal protection of the laws because it was only the nature of their offenses coupled with the policy of the Department of Institutions, Social and Rehabilitative Services which caused the juveniles to be certified to stand trial as adults. The defendants argue that 10 O.S.1971, § 1129, which provides that the act should be liberally construed to the end that its purpose may be carried out, to wit: "That the care and custody and discipline of the child shall approximate, as nearly as may be, that which should be given by its parents, and that, as far as practicable, any delinquent child shall not be treated as a criminal," requires a higher showing of lack of amenability than was present in this case. However, our legislature in 10 O.S.1971, § 1112, the section dealing with certifying juveniles to stand trial as adults, indicates that the legislature thought that there were some instances in which the interests of society and the individuals involved would be best served by treating as adults the children who were alleged to have committed crimes. In so stating, the legislature listed eight criteria which were to be considered by the court in determining whether or not to certify a child. Those eight guidelines were reiterated in *J.T.P. v. State*, supra, at 1278–1279. The criteria to be considered are (1) the seriousness of the alleged offense to the community; (2) whether the alleged offense was committed in an aggressive, violent, premeditated or wilful manner; (3) whether the offense was against persons or prop-

erty, greater weight being given to offenses against persons especially if personal injury resulted; (4) whether there is prosecutive merit to the complaint; (5) the desirability of the trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults; (6) the sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living; (7) the record and previous history of the juvenile, including previous contacts with community agencies, law enforcement agencies, schools, juvenile courts and other jurisdictions, prior periods of probation or prior commitments to juvenile institutions; and (8) the prospects for adequate protection for the public and the likelihood of reasonable rehabilitation of the juvenile if he is found to be guilty of the alleged offense, by the use of procedures and facilities currently available to the juvenile division.

While it is true as the defendants contend that *J.T.P. v. State*, supra, at 1279, states that there is no presumption that a juvenile who commits a serious offense is not receptive to rehabilitation, the first three criteria to be considered as listed above deal with the nature of the crime alleged to have been committed by the juvenile. In the instant case, the crime alleged to have been committed is second degree murder, and the evidence at the certification hearing indicates that the murder was committed in an aggressive and violent manner. Furthermore, this Court in *Bias v. State*, Okl.Cr., 561 P.2d 523, 528 (1977), upheld a certification stating that the showing of nonamenability to rehabilitation was met by "the seriousness and violent nature of the crime, its premeditation and defendant's admission of callous disregard and 'cold blooded' attitude toward the victim and the crime."

The defendants further argue that it was error for the judge to consider that the defendants were over 17 in determining that they should be certified, because 10 O.S.1971, § 1139(b), gives DISRS authority over boys who have been adjudged delinquent until they reach 21 years of age. We must point out that that statute giving DISRS authority over girls until they reach 18 years of age and over boys until they reach 21 years of age violates the equal protection clause in the Fourteenth Amendment to the United States Constitution. See, *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). Further, this Court stated in *Purnell v. State*, Okl.Cr., 561 P.2d 109, 111 (1977):

"[A]s a practical matter and in accordance with other statutes that bestow majority rights upon a juvenile at the age of eighteen (18) years of age, as a matter of policy DISRS discharges the juvenile from further custody at that age. . . ."

Therefore, we cannot say that the trial court erred in considering that as a practical matter there were no facilities available within the juvenile system to rehabilitate the two defendants. Furthermore, with regard to the defendant Sanders, the uncontroverted evidence showed that he had been adjudicated a delinquent for armed robbery. *J.T.P. v. State*, supra, requires that there be substantial evidence to support a finding that a child is not amenable to rehabilitation, and in *Calhoon v. State*, Okl. Cr., 548 P.2d 1037 (1976), this Court held that substantial evidence means more than a scintilla. Considering all the evidence presented at the certification hearing, there was substantial evidence to support the trial court's decision to certify the defendants to stand trial as adults, and the trial court did not err in considering the factors which it did consider.

The order of the Juvenile Division of the District Court, Tulsa County, in surrendering its jurisdiction and certifying the juveniles to stand trial for proceedings as adults is AFFIRMED, and the Juvenile Division of the District Court is instructed to proceed with proper criminal proceedings in the case, bearing in mind that the juveniles are entitled to preliminary hearing or examination prior to arraignment, unless properly waived.

BUSSEY, P. J., and BLISS, J., concur.