Tommy D. BERRYHILL, a juvenile under the age of eighteen years, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. J–77–471.

Court of Criminal Appeals of Oklahoma.

Sept. 2, 1977.

R. Jay Cook, Muskogee, for appellant.

James E. Edmondson, Asst. Dist. Atty., Muskogee County, for appellee.

## OPINION

BRETT, Judge:

Appellant, Tommy D. Berryhill, a juvenile, appeals from an order of the Juvenile Division of the District Court, Muskogee County, Oklahoma, Case No. JF–77–47, waiving jurisdiction over him and empowering the State to prosecute him as an adult on the charge of Murder in the First Degree.

Appellant was charged with "[effecting] the death of Anna Maxfield by means of beating the said Anna Maxfield with his hands and fists and/or other dangerous weapons, striking and beating her about the head and body with force and violence, while engaged in the commission of the crime of forcible rape." He was certified to stand trial as an adult for this crime in Case No. JF–76–108, and in *T.D.B. v. State*, Okl. Cr., 561 P.2d 577 (1977), this Court reversed for further proceedings on the ground that the original petition was improperly verified.

The following evidence was presented at the certification hearing. On September 5, 1976, the badly beaten body of Anna Maxfield was found on the floor of her home by one of her daughters. The head and face of the body were swollen, and the head had been crushed in as though it had been stomped and beaten. There were marks on the body where the decedent's assailant had bitten her. Expert witnesses testified that while it was extremely difficult to place the exact time of death, in all probability the decedent had died at least twelve hours before the autopsy which was conducted in the early afternoon, and that the injuries which finally caused Mrs. Maxfield's death could have occurred several hours prior to the actual time of death.

At around 3:00 p. m. on September 4, a young Indian male driving a 1959 or 1960 white International pickup without a rear bumper or tailgate, drove into a Porum, Oklahoma, gas station. According to the testimony of the owner of the gas station and of his attendant, the white pickup was running extremely hot and was making a lot of noise. The driver of the truck wanted to purchase a fan belt but said he did not have enough money to pay for it. The owner of the gas station told him he could look through some used fan belts to see if there was one he wanted, but the young man left without getting one. Both the owner of the station and the gas station attendant picked the juvenile out of a photographic lineup and also testified in court that the juvenile appeared to be the person about whom they had testified. They also identified pictures of the juvenile's truck as appearing to be the truck which defendant drove to their station that day. They both said that the juvenile indicated that he was on his way to Eufaula.

The State's next witness was Louise Sampson, who lived a mile south of Porum. She testified that sometime between 3:00 and 4:00 p. m. on the afternoon of September 4, a young man came to the door asking for directions to the Eufaula dam and for water for his truck, an old white pickup which made a lot of noise. The woman said she became frightened when the young man told her that it sounded to him as though she lived there alone, so she told him that her husband was in the house and slammed the door. She said that although she gave him directions to Eufaula dam, when he left he took the road back into Porum rather than taking either of the routes to the dam. She identified the juvenile as the young man.

Several of Mrs. Maxfield's neighbors reported having seen an old white noisy pickup in front of Mrs. Maxfield's house. Shortly after one of her daughters had brought her home from grocery shopping at about 3:00 p. m. George Stewart reported having seen the vehicle at about 4:00 p. m. and reported that the tailgate was either down or missing. Leonard Cooper said that the pickup stayed in front of the house for approximately 30 to 40 minutes sometime between 3:00 and 4:00 in the afternoon. Dovie Cooper reported that she saw what she thought was an early 1960's model white pickup and heard it making a lot of noise. She said she saw a dark complected, dark haired young man, who weighed between 150 and 175 pounds and who was about 5'10", running from the truck. She said that she would be unable to identify the young man, because she had seen him from such a long distance.

Sheriff Eugene Doyle testified that at about 9:30 on the night of September 4, the juvenile came to his office in Eufaula saying that he had run his pickup off into a ditch, and that he had gone into Eufaula where he had met a couple of boys who had "rolled" him for $40.00. His right hand appeared to hurt, and he had a stain on his clothes which the Sheriff said looked like blood. He had driven his 1958 white International pickup off into a ditch. He still had $10.00 which he said he had hidden away.

Herschel Alexander, who owned a body shop and wrecker in Eufaula, testified that he had gone with the juvenile to get his older model white International pickup truck which he had run off the highway. Alexander testified that the juvenile had a

dark spot on his clothes, and that he said he had hurt his hand when the pickup went into the ditch. The juvenile told Alexander that he had $10.00, but he drove off without paying. Alexander also stated that the juvenile threw some things that fell out of the truck over into the ditch.

Leola Harrison, the decedent's daughter, found her mother's body at about 9:30 Sunday morning. The groceries, including perishables, which Mrs. Maxfield had purchased the previous afternoon were still in the shopping bag on the table. Her mother's purse was open, and various articles from the purse were strewn about. Mrs. Harrison testified that her mother should have had at least $35.00, but that no money was in the purse.

Verlene Stewart, the decedent's other daughter, testified that she had taken her mother grocery shopping the day before and that they had returned shortly after 3:00 p. m.

Semen and phosphatase were found in the decedent's vagina indicating that the woman, who was in her eighties, had had sexual intercourse shortly before her death. Samples of the juvenile's pubic hair matched hair samples that were found on the decedent's body, and an OSBI forensic chemist testified indicating that the two samples of hair could have come from the same person.

Psychiatric evaluations of the juvenile determined that he knew right from wrong, was not psychotic, and would be able to assist counsel in the trial of his case. He had an I.Q. of 88 or 89, and the results on the Addiction Research Center inventory ranged from the mid to upper 20's in September of 1976 to 39 in April of 1977. Both of these results were below the cutoff point for sociopathic behavior which is set at 40. In discussing the results of the earlier test, Dr. R. D. Garcia stated that the juvenile's score indicated an elevation of addictive behavior which would "merit watching" although it was below the critical level. Dr. H. Brent Dietsche, in discussing the later test, stated that while the score was high and indicated that one should look out for alcoholism, the score did not indicate sociopathy or criminal behavior. The juvenile had had no previous juvenile petitions filed against him, and had had no prior probations or commitments to juvenile institutions.

■ The juvenile raises six propositions of error. The first proposition is that the motion to quash the petition should have been sustained on the ground that the precise location of the crime was not alleged. The petition stated that the crime occurred in Muskogee County, and upon the juvenile's motion to quash the words "in the town of Porum" were interlineated. The juvenile cites the cases of *Davidson v. State*, 20 Okl.Cr. 368, 209 P. 779 (1922); *Ross v. State*, 78 Okl.Cr. 293, 147 P.2d 797 (1944); and, *Frazier v. State*, Okl.Cr., 267 P.2d 155 (1954), to support his proposition. These cases stand for the proposition that an information is sufficient if it apprises the accused of the offense of which he is charged and states enough facts to enable him to prepare his defense and to protect him from jeopardy against another prosecution on the same set of facts. The juvenile fails to cite the case of *Carlile v. State*, Okl.Cr., 493 P.2d 449 (1972), in which this Court stated that it is not always necessary to allege the exact location within the county where a crime occurred. We reiterate what we said in that case, however, i. e., if there is a multiplicity of similar offenses occurring during the same time span, the State should allege the exact location of the offenses in order to afford the defendant the constitutional guaranty against double jeopardy. Further, if the exact location is necessary in order for a defendant to prepare his defense, the exact location should be stated in the information. However, in a case such as this one, where the information stated who was murdered and how the decedent had been murdered, the defendant was afforded all the guaranties intended to be afforded by the requirement of specificity in the information.

■ The juvenile's second proposition of error is that there was insufficient evidence from which to find prosecutive merit.

A finding of prosecutive merit requires that the judge find first that a crime was committed and second that there is probable cause to think that the accused juvenile committed the crime. See, *J.T.P. v. State*, Okl.Cr., 544 P.2d 1270 (1975); *Matter of Sanders*, Okl.Cr., 564 P.2d 273 (1977). Here, there is no question that the crime was committed; the testimony regarding the condition of the body precludes a finding that the decedent died a natural death. The juvenile urges that the standard for finding prosecutive merit should be the standard required for binding over a defendant at preliminary hearing. We agree. The juvenile cites the case of *Jones v. State*, Okl.Cr., 481 P.2d 169 (1971), to show there was insufficient evidence. In that case, however, the holding was not that a person could not be bound over solely on the basis of circumstantial evidence, but rather that there was no evidence presented at the preliminary hearing which linked the accused to the crime committed. Here, there was ample circumstantial evidence to tie the juvenile to the crime. A person fitting his description was seen leaving a truck which met the description of his truck and going into the decedent's house shortly after the time she had returned home from grocery shopping. The fact that her perishable groceries were still in the grocery bag on the kitchen table when her body was found indicates that the decedent was assailed shortly after the time she arrived home from shopping. This Court has repeatedly held that not only is it not necessary to present sufficient evidence at preliminary hearing to convict the defendant, but also that the burden of putting on evidence at a preliminary hearing may be met entirely through circumstantial evidence. See, *Turner v. State*, Okl.Cr., 549 P.2d 1346 (1976); *State v. Edmondson*, Okl.Cr., 536 P.2d 386 (1975). Circumstantial evidence can meet the requirement of "sufficient cause to believe the defendant guilty" for the preliminary hearing, as required by 22 O.S.1971, § 264, and by the same token is sufficient to establish prosecutive merit in a juvenile certification hearing.

■ The juvenile next contends that there was insufficient evidence to show that the juvenile was not amenable to rehabilitation within the juvenile system. *J.T.P. v. State*, supra, requires substantial evidence to show nonamenability, and substantial evidence has been defined in *Calhoon v. State*, Okl.Cr., 548 P.2d 1037 (1976), to mean "more than a scintilla." Both *J.T.P. v. State*, supra, and 10 O.S.1971, § 1112(b), set out the guidelines to be considered in determining whether the juvenile is amenable to rehabilitation within the juvenile system. Murder which occurs during the course of a rape is a serious offense to the community. Furthermore, from the evidence submitted it appears that the alleged offense was committed in an aggressive, violent, premeditated and wilful manner. The offense was against a person rather than property, and as we have already pointed out there is prosecutive merit to the complaint. The evidence showed that the juvenile did know right from wrong. Therefore, although the juvenile had never had any previous petitions filed against him, we must agree with the District Court in its finding that the juvenile is not amenable to rehabilitation within the juvenile system. See, *Matter of Sanders*, supra.

■ The juvenile's fourth proposition of error is that he should have been allowed to have independent psychological testing at the State's expense. The juvenile cites *Seibert v. State*, Okl.Cr., 457 P.2d 790 (1969), in which this Court stated that there was no authority to require the State to provide independent psychiatric examinations for defendants. The juvenile urges that the rule for a juvenile should be different from that set out for an adult. In this case, however, the juvenile stated that he is not considering a defense of insanity, and it appears that the only thing he objects to regarding the psychiatric testing which was done is that the testing done in April of 1977, showed the juvenile as being closer to the critical limits on the Addiction Research Center inventory test that the earlier testing had done. There is no indication that the trial court placed undue emphasis on that particular test in his determination of

lack of amenability to rehabilitation, and indeed there is more than enough evidence to warrant the trial court's finding of lack of amenability.

 The juvenile's fifth proposition of error is that his motion to suppress the evidence regarding his hair samples should have been sustained on the basis first that it was a search incident to an illegal arrest, and second that the evidence was obtained from the juvenile when neither his parent nor his attorney was present. Under Oklahoma law, a peace officer without a warrant may arrest a person when a felony has been committed and the peace officer has reasonable cause for believing that the person arrested has committed it. See, 22 O.S. 1971, § 196, ¶ 3. The juvenile cities such cases as *Greene v. State*, Okl.Cr., 508 P.2d 1095 (1973), and *Simmons v. State*, 94 Okl.Cr. 18, 229 P.2d 615 (1951), for the proposition that the arresting officer must have reasonable grounds for believing that the person arrested committed the crime with which he is to be charged. In the instant case, all the evidence regarding prosecutive merit that was presented at the certification hearing with the exception of the scientific evidence was known at the time of the arrest. Considering that evidence as a whole, we must hold that the arresting officer had reasonable cause for believing that the juvenile was responsible for the crime.

■ The juvenile's contention that taking the hair samples from the juvenile was in contravention of 10 O.S.1971, § 1109(a), which states that no information gained by questioning a child shall be admissible into evidence unless the questioning is done in the presence of the child's parents, guardian or attorney is without merit. That prohibition clearly applies only to testimonial evidence and not to physical evidence.

The juvenile's final proposition of error is that the District Court erred in overruling the juvenile's demurrer. He urges that his five previous propositions support the sixth proposition. However, as none of the previous five propositions were meritorious, we hold that the lower court did not err in overruling the juvenile's demurrer.

The order of the Juvenile Division of the District Court, Muskogee County, in surrendering its jurisdiction and certifying the juvenile to the Trial Division of the District Court for proceedings as an adult is AFFIRMED, and the Trial Court Division of the District Court is instructed to proceed with proper criminal proceedings in the case, bearing in mind that the juvenile is entitled to a preliminary hearing or examination prior to arraignment, unless properly waived.

BUSSEY, P. J., concurs.