In the Matter of R. B., a child under the age of eighteen (18) years.

No. J–78–208.

Court of Criminal Appeals of Oklahoma.

Sept. 18, 1978.

Joe P. Robertson, Robertson & Hicks, Wagoner, for appellant.

Herbert E. Elias, Sp. Prosecutor for the State of Okl., Tulsa, for appellee.

## OPINION

CORNISH, Judge:

Appellant, R. B., has perfected this appeal from the District Court, Wagoner County, from an order in Juvenile Case No. J–75–51, entered by the Honorable Richard W. Carpenter, certifying the appellant to stand trial as an adult for the offense of Manslaughter in the Second Degree. This order was rendered on March 21, 1978.

In December of 1976, we issued an order reversing the certification of appellant as an adult.[1] Our opinion concluded that the

---

1. This Court's order read in part as follows: "Briefly stated, the facts are that in the late afternoon of November 1, 1975, the juvenile, who was seventeen years old at the time, and a friend were walking back from their duck hunting position near a Wagoner County navigational canal when they heard a rustling in the bushes nearby. The juvenile turned and fired his shotgun, thinking the noise was a deer. They heard a man's

State had failed to establish the juvenile's nonamenability to rehabilitation.

"scream and then saw a man run out of the bushes screaming and yelling. They ran for their pickup truck and went home, agreeing to remain silent about the incident. The victim's hunting companions arrived on the scene shortly thereafter, but the victim died before he could reach a hospital. In the early morning hours of the following day, the juvenile and his father were brought in for questioning by the Sheriff's Office and, after both were advised of the juvenile's constitutional rights, the juvenile admitted firing the fatal shot.

"Testimony from a school teacher showed the juvenile to be a bright student, well behaved, well liked and no disciplinary problem in school. The youth's father testified that his son had never been before the Juvenile Court previously and that he had received only two traffic citations: for careless driving and open container. He was ordered to stop driving in the former case for 30 days and obeyed that order, and stopped drinking beer after he paid a $25.00 fine in the latter citation. The District Supervisor of the Court Related and Community Services Division of the Welfare Department was given a hypothetical fact situation quite similar to this case and stated that the juvenile would be a fit subject for rehabilitation under the juvenile programs. The juvenile's teacher said the youth would respond to juvenile counseling and guidance, and recommended that he not be taken from his home and school environment. The Court certified the juvenile to stand trial as an adult."

The Court then recited the eight guidelines set out in 10 O.S.1971, § 1112, and continued as follows:

"And from these guidelines the court must conclude that (1) there was merit to the complaint, and (2) the juvenile is not a fit subject for rehabilitation by the facilities and programs available to the Juvenile Court. *J. T. P. v. State*, Okl.Cr., 544 P.2d 1270 (1975). *J. T. P.* said it was not necessary for the trial court to find each of those eight guidelines to be decided against the juvenile, but just that they, taken together, lead to the two conclusions as stated above. The latter conclusion was interpreted by this Court in *Calhoon v. State*, Okl.Cr., 548 P.2d 1037 (1976), to the extent that the records must show 'substantial evidence' that the juvenile is not amenable to rehabilitation. This requirement, we find, was not met by the State. In fact, we feel that just the opposite was shown by the testimony of the juvenile's teacher, the Court Related Services' District Supervisor, and the youth's father. All of the witnesses, aside from the three named above, testified to the

On January 27, 1977, defense counsel filed a motion to dismiss which was not

events and circumstances of the shooting itself. *In fact there was no testimony whatsoever that the juvenile, if turned over to the juvenile authorities, would not be amenable to rehabilitation,* which is, after all, the goal of the Oklahoma Juvenile Code.

"The seriousness of the alleged crime itself does not lead to the conclusion of non-amenability for as we said in *J. T. P. v. State*, supra, 'There is, after all, no presumption built into the Act that a child who has committed a very serious offense is not receptive to rehabilitative treatment.' We find this is especially important here in light of the alleged crime at bar, a hunting accident, albeit a negligent one. There was no evidence of malice or premeditation on the part of the charged juvenile.

"This Court further stated in *J. T. P.* that: " 'The decision that a child is unfit for rehabilitation within the juvenile system is one within the discretion of the juvenile judge. That discretion, however, must be exercised within the bounds of due process which requires *not only the procedural regularity* which we have discussed, but *substantial evidence* against the child's claim to the benefits of juvenile treatment.' (Emphasis added)

"For a definition of 'substantial evidence' we must go to *Calhoon v. State*, supra, which takes it from *Corbin v. United States*, 253 F.2d 646 (10th Cir. 1958), and states:

' " 'Substantial evidence is more than a scintilla. It must do more than create a suspicion of the existence of the fact to be established. We must consider the case as a whole and not piecemeal. The lines of proof must be considered together, not separately. Even if each line of proof taken by itself is of insuffcient (sic) probative value, the conclusion does not necessarily follow that the proof taken as a whole is insufficient. The lines of proof interweave and support each other.' " '

"Utilizing this criteria of 'substantial evidence,' and after a careful reading of the transcript of the certification hearing we find no evidence whatever of non-amenability to rehabilitation. In fact, we find evidence that the opposite may exist, that the youth is amenable to rehabilitation.

"For the above and foregoing reasons, the order of the District Court certifying R. B. as an adult for criminal prosecution is *REVERSED* and the cause *REMANDED* for further proceedings in the form of further evidence that the juvenile is not amenable to rehabilitation, or adjudication and disposition within the juvenile program." (Emphasis added)

ruled on until February 1, 1978. During this interim, the lower court points out in its order that there occurred a change in the staff of the District Attorney's Office. Due to this change, a dispute arose between the new Assistant District Attorney and the deceased's father. On December 2, 1977, at the urging of the deceased's father, the Attorney General's Office appointed Mr. Herbert Elias as special prosecutor. Mr. Elias informed the District Court of his appointment on January 17, 1978, and on January 19, 1978, an order for a hearing on the motion to dismiss was issued. The motion to dismiss was overruled and the certification hearing was held on March 21, 1978. At this hearing, the State called three witnesses.

Bill Mansker, senior high school principal of Wagoner High School, produced school records for the school year of 1974–1975. The records indicated that appellant had low grades and that in the first nine week period appellant missed two days of classes. In the second nine week period eight days were missed, and before transferring to another school in the third nine weeks, an additional two days were missed. The witness stated he did not know whether or not these absences were excused or unexcused and that this number of absences was not extraordinary.

Fred Adams testified he had been high school principal at Wagoner in the years of 1973, 1974 and 1975. He testified that he knew R. B, that he had talked to him about excessive absences and that R. B. expressed unhappiness with attending Wagoner High School. He stated he could not recall a serious attitude problem and that in the third nine weeks of the 1974–1975 school year, R. B. requested a transfer to another school.

District Supervisor for the East Central Seventh District of Court Related Community Services, Fred Hill, also testified. He stated that in 1976 if a juvenile were committed to a detention center, such as Hele-

na, the average length of stay would be four and one-half months and probation and, thereafter, for six months. A hypothetical question, based on the facts of this case, was posed to Mr. Hill in which a juvenile was certified to be an adult on September 23, 1976, and would become 18 years of age on October 9, 1976. Mr. Hill responded that due to the short time prior to the juvenile's becoming 18 years of age, there would not be a sufficient period of time for rehabilitation and, thus, he would not be amenable to the juvenile services. On cross-examination, the witness stated that if the juvenile in the hypothetical question were 17 years and one month of age he believed there would be a very good chance of rehabilitation. He further testified that if any individual were placed on probation and supervised by his department in the community, the juvenile might be released in as few as 30 days if the facts warranted it. On re-direct, Mr. Hill stated that the court could have placed the juvenile on probation as a delinquent and under supervision of counselors until the age of 21.

■ Appellant first contends the trial court erred in finding the juvenile had not been denied a speedy trial. We find considerable merit to this proposition. In the case of *L.D.F. v. State*, Okl.Cr., 561 P.2d 114 (1977), the petition to certify the juvenile was not filed until 20 months after the incident from which charges arose and after the juvenile had reached the age of 18. In the present case, the first certification hearing was held on February 5, 1976. Appellant made application for disposition on April 27, 1976, however, the court did not hand down the certification order until September 23, 1976, approximately three weeks prior to appellant's 18th birthday. This Court reversed the trial court's decision on December 3, 1976, and the mandate issued on December 29, 1976. On January 27, 1977, appellant filed a motion to dismiss which was not heard until January 19, 1978. The second certification hearing was held

**1354**

on March 21, 1978, some 29 months after the incident and 16 months after this Court reversed the prior decision.

■ The special prosecutor contends that appellant was not prejudiced by delay, due to the fact that at the second certification hearing all issues were addressed as if the date were September 23, 1976. One only has to look at the court's order certifying appellant as an adult to see this argument is totally without merit:

"From the testimony offered by the State the Court finds that the juvenile was nineteen (19) years of age in October of 1977. . . .

"The Court finds that the Department of Institutions, Social and Rehabilitative Services has no jurisdiction for the reason said juvenile turned nineteen (19) years of age in October of 1977. That a failure to certify would turn the juvenile free from any prosecution whatsoever."

The prejudice caused by the delay is clearly apparent. Although this is not the blatant "bootstrapping" that occurred in *L.D.F,* supra, we feel that the result is the same. The only explanation offered for this delay of 29 months is that, after reversal of the original order, a dispute arose between the Assistant District Attorney and the deceased's father. Also, the trial judge was ill between October and November of 1977, some ten months after this Court's decision and nine months after a motion to dismiss was filed. The juvenile system is geared to speedy disposition of those brought before it in order to avoid the problem created in the present case. The State, whether through the prosecution or the judiciary, will not be allowed to take advantage of its own errors and delays to the detriment of a juvenile. To rule otherwise would be to encourage delay in an area which requires reasonable speed and diligence.

■ We also find merit in appellant's second assignment of error challenging the court's finding that appellant was not a fit subject for rehabilitation in the juvenile system. The juvenile court's decision and the special prosecutor's argument rely almost exclusively on the age of the appellant. In the lower court's original certification order, that court took judicial notice of appellant's age·and the services available, as follows:

". . . In as much as this juvenile reaches the age of 18 years this October, 1976, the Court will take notice that the facilities and programs available to the juvenile court would be nil if he was found guilty of the offense charged."

In reversing the certification order in December of 1976, this Court was aware of these facts. At that time, the juvenile court could retain jurisdiction of a juvenile until the age of 21. We felt that the State should be given another opportunity to introduce "substantial evidence" as to the nonamenability of the appellant and, failing this, the court should handle the appellant as a juvenile. From the evidence presented at the subsequent hearing, as summarized above, we cannot find that substantial new evidence was presented to show that the appellant was not amenable to rehabilitation.

This Court has recently faced a similar situation in *S.H. v. State,* Okl.Cr., 581 P.2d 916 (1978), in which the juvenile was charged with second degree murder and certified as an adult. The first order of certification was reversed for failure to show nonamenability of the juvenile to rehabilitation. In reversing a second certification order for failure to present sufficient evidence to show nonamenability, this Court stated:

"We hold that the order cannot stand. First, the fact that the defendant is now 18 years of age cannot determine the issue. The incident for which the defendant was charged occurred on January 17, 1975. Because the original certification hearing was improperly conducted, and because the State chose to wait a full seven months after the first certification order was reversed, more than three

years have now elapsed since the incident. The defendant should not be penalized because he chose to exercise his right to appeal from an improper certification hearing and because the State waited seven months after this Court reversed the original conviction to hold the second hearing. See *L.D.F. v. State,* Okl. Cr., 561, P.2d 114 (1977).

\* \* \* \* \* \* \*

"It would be manifestly unreasonable for this Court to have held in regard to the previous certification hearing that the certification was improper because there was no evidence with regard to whether the defendant was amenable to rehabilitation and then to affirm this certification where the evidence indicated that the defendant should not be certified, simply because of the passage of time and the fact that the court's order recited the ultimate findings of prosecutive merit and nonamenability of rehabilitation."

This Court has long recognized the compelling public interest in punishing those who needlessly take the lives of others by the negligent use of firearms. However, when a juvenile is involved in such culpable acts, the legislature has seen fit to provide a system directed at rehabilitation. In the present case, the appellant has been denied his opportunity to participate in this system through no fault of his own. If "failure to certify would turn the juvenile free from any prosecution whatsoever" then let the lack of prosecution fall squarely on the shoulders of those responsible. The appellant has lived over 29 months with the threat of prosecution hanging over his head, and we feel that it is time to put an end to these proceedings. Accordingly, we *RE-VERSE* and *REMAND* the order certifying the appellant as an adult with directions to dismiss.

BUSSEY, P. J., concurs in results.

BRETT, J., concurs.