**Waymond Kent LANE, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F-76-559.**

Court of Criminal Appeals of Oklahoma.

Jan. 17, 1977.

O. T. Osherwitz, Duncan, Okl., Court Appointed, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Alan Foster, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge.

Appellant, Waymond Kent Lane, hereinafter referred to as defendant, was charged in the District Court, Stephens County, Case No. CRF–74–164, for the offense of Conjoint Robbery by Force, in violation of 21 O.S.1971, § 800. He was tried by a jury and convicted, with his punishment being set at ten (10) years' imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

On September 24, 1974, when the crime involved was committed, R. W. Mitchell was the owner and operator of Mitchell's Ice Dock in Duncan, Oklahoma. On that date he had four men working late in order to get sufficient ice sacked for the next day; Randy Williams and Ron Griffith were on the upper floor crushing and sacking ice, and the defendant and Ronnie Younts were on the lower floor stacking the sacked ice sent down from above. Mr. Mitchell testified at the trial that he left his office on the upper level and went down the stairs to check on his laborers at approximately 8:30 or 9:00 p. m., and that as only the ice vaults themselves were lighted he did no more than check the immediate vault area. When he turned to go back upstairs, he was struck on the back of the head and knocked to the floor, and his three-carat-plus diamond ring was taken from his finger.

Ron Griffith testified that the defendant had approached him during the day about rolling Mr. Mitchell for the ring, and that he had heard the defendant ask Ronnie Younts the same thing. He testified that when he and Randy Williams stopped to take a break they heard Mr. Mitchell "mumbling" downstairs, and they immediately left the premises and went to Williams' car. Griffith also stated that just as they were getting into the car Younts and the defendant came from the back of the building and also got into the car and they all drove away. He said that the defendant produced the ring that night in the car and that he had it with him the next day when the two of them went to Oklahoma City, where the ring was sold.

Randy Williams and Rick Griffith (Ron's brother) both testified to seeing the defendant in possession of the ring that same night, and Rick Griffith and Janice Tilley saw it in his possession the next day on the way to Oklahoma City. Rick and Janice each testified that the defendant told them of hitting Mitchell on the back of the head.

On October 1, 1974, the defendant was arrested and taken to the Duncan Police Station, where he was put in a room by himself while his father was notified. Upon the arrival of Mr. Lane, Detective Chasteen and Lloyd Harris came into the room, informed the Lanes of their constitutional rights under the Miranda decision, and asked the defendant whether he would care to make a statement. The defendant indicated that he would prefer to talk outside the presence of his father, and Mr. Lane consented to leave the room while the defendant made a statement, which reads as follows:

"Statement of Waymond Kent Lane— Age 16, D.O.B. [date of birth] 10–9–57

"[Initials 'K. L.'] On Sept 24th 1974, Ron Griffith & I were at his house. Randy Williams came by & picked us up & we went riding around.

"We went to the Ice plant. Mr. Mitchell said he needed someone to sack ice because it was melting. We went to eat and came back about 6:30 or 7:00 p/m.

"There was two boys working there when we got there. We worked about two hours. Ronnie & I was taking ice from one vault to another. Ron & Randy was upstairs sacking ice.

"I told Ron, Randy & Ronnie I was going to take Mr. Mitchell's Ring. It was a man's yellow gold ring with one diamond. We were upstairs at this time.

"When I told them this Ron & Randy stayed upstairs. Ronnie & I went back downstairs. Ronnie was inside a vault working. I called Mr. Mitchell downstairs. He fell down the stairs & just layed there. I took his ring from his finger and I also took his wallet. I ran upstairs & Ron & Randy were in the office. Ronnie had followed me upstairs.

I told them what I had done & we left & went to Comanche. We made the drag & then Randy took Ron & I to Ron's house. We had already taken Ronnie home before we left Duncan. He lives on West Main street in Duncan.

"The next morning my dad came down & gave me five dollars.

"We went back to sleep for awhile before we got up. Janice Tilley came down to Ron's. She took us to Okla. City. We were going to the fair. We went to Ron's cousins house. We told her we had a ring to sell. We stayed at her house & went to the fair the next day. Ron's cousin said she knew a Girlfriend that might buy the ring & she took it to work with her. The Girlfriend bought the ring for Two Hundred & Sixty dollars ($260.00). Ron, Jan & I spent the money. I didn't tell Jan where I got the ring but she knew. I guess she just figured it out.

"We stayed with Ron's cousin until yesterday & we came back to Duncan & they let me out at Ronnies house. I stayed all night with Ronnie & Ron & Jan went on to Comanche.

"The Police picked me up on Cypress street by Playday Park.

"The above statement is true to the best of my knowledge. It was given of my own free will, & with the permission of my Dad.

/s/ W. Kent Lane

"Witness:
/s/ Alvie Chasteen
/s/ L.A. Harris"

At the trial this statement was admitted into evidence after an in camera hearing, and the defendant's first assignment of error is that that admission was improper. The defendant cites 10 O.S.1971, § 1109, which provides, in pertinent part:

"(a) No information gained by questioning a child shall be admissible into evidence against the child unless the questioning about any alleged offense by any law enforcement officer or investigative agency, or employee of the court, or the Department is done in the presence of said child's parents, guardian, attorney, or the legal custodian of the child, and not until the child and his parents, or guardian, or other legal custodian shall be fully advised of their constitutional and legal rights, including the right to be represented by counsel at every stage of the proceedings, and the right to have counsel appointed by the court and paid out of the court fund if the parties are without sufficient financial means; . . ."

In *J. T. P. v. State,* Okl.Cr., 544 P.2d 1270 (1975) at page 1277, we said, in regard to this statute:

"This provision clearly establishes an automatic and mandatory rule. A failure by the prosecution to show compliance with its requirements will render the admission or confession of a child inadmissible into evidence against him without the necessity of further inquiry into circumstances. No custodial interrogation of a child may proceed until both the child and his parents have been fully advised of their constitutional and legal rights; nor may such interrogation be conducted outside the presence of the child's parent or guardian or attorney. . . ."

 Partial and substantial compliance is not sufficient, as shown in *Crook v. State,* Okl.Cr., 546 P.2d 648 (1976). In that case, after the defendant and his grandmother— who was his custodian—were advised of their rights under the Miranda decision and had acknowledged that they understood them, the defendant indicated that he would rather make his statement without his grandmother being present. The grandmother left the room and the defendant gave a statement admitting his guilt. Then after the grandmother returned to the room, the defendant again confessed. At the hearing on the Motion to Suppress, the trial court ruled that the statement given while the grandmother was gone was inadmissible, but that the confession made in the presence of the grandmother was admissible. And on appeal we found no error in that ruling. The statement of the defendant in this case is identical to the first statement in *Crook v. State,* supra, and like

that statement it must be held inadmissible. However, in view of the overwhelming evidence of defendant's guilt, it cannot be said that the admission of the statement contributed to the verdict of the jury. We are of the opinion that if the case were reversed and remanded, and the same evidence presented, absent defendant's statement, to a different jury, they could arrive at no other verdict but that the defendant was guilty. Under the circumstances here presented the admission of the statement was harmless error under the rule enunciated in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) and *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

■ The defendant's second assignment of error is that the punishment imposed was excessive and not supported by the evidence. Since we have found that the evidence overwhelmingly supports the verdict of the jury, independent of the defendant's statement, we are of the opinion that the judgment and sentence appealed from should be affirmed. However, in view of the erroneous admission of the statement, and the age of the defendant at the time of the commission of the crime (16), we are of the further opinion that the judgment and sentence should be modified from a term of ten (10) years' imprisonment to the minimum of five (5) years' imprisonment.

For all of the above and foregoing reasons the judgment and sentence is MODIFIED from a term of ten (10) years' imprisonment to a term of five (5) years' imprisonment, and as so modified, the judgment and sentence is AFFIRMED.

BLISS, J., concurs.

BRETT, P. J., concurs in results.