**In the Matter of G. L. W., a child under 18 years of age.**

No. J–77–770.

Court of Criminal Appeals of Oklahoma.

June 16, 1978.

Joe B. Reeves, Lawton, for appellant.

Mike R. Chaffin, Asst. Dist. Atty., Grady County, for appellee.

## OPINION

CORNISH, Judge:

G.L.W., a juvenile, appeals from an order of the Juvenile Division of the District Court, Grady County, Case No. JFJ–77–49, waiving jurisdiction over him and certifying him to stand trial as an adult for the offense of Murder in the Second Degree.

On June 8, 1977, the appellant shot and killed Raymond Ward. The two boys had encountered difficulties in the past and on the day of the shooting, Ward mentioned several times that he had been offered $10.00 to beat up the defendant. Testimony concerning the events which took place on the 8th was conflicting, but inasmuch as the defendant has not challenged the District Court's finding of prosecutive merit, we do not deem it necessary to discuss all the facts.

In his first assignment of error, the appellant argues that the Juvenile Code requires that written notice be given to a child and his parents of the specific allegations made against the child. He further alleges that such notice was not given in this case. The pertinent statutes are 10 O.S.1971, § 1104 and § 1105, which were in effect at the time this proceeding was initiated. Section 1104 required that a summons issue unless the parties voluntarily appeared, and Section 1105 required personal service on the person summoned, and provided that no hearing could be held until 48 hours after service of the summons, unless the parents consented.

■ The record shows that the juvenile appeared in court with his parents and that they were given a copy of the petition. The

record further shows that the appellant's parents were served with a summons, the return of which was filed on July 15, 1977, notifying them of the hearing which was held on July 19, 1977. Therefore, the first assignment of error is without merit. See *Nickell v. State*, Okl.Cr., 562 P.2d 151 (1977).

■ Secondly, he contends that the oral statement given to Deputy Sheriff Darrell Willis was obtained illegally and should not have been admitted at the hearing. Although it is clear from the record that the appellant and his father were fully informed of their rights before the appellant's statement was taken, he argues that the interrogation was conducted in violation of the state statute.

To support his argument, the defendant cites Laws 1976, c. 102, § 1, which was in effect at the time of the incident,[1] and *J.T.P. v. State*, Okl.Cr., 544 P.2d 1270 (1975). In *J.T.P.*, we stated that a juvenile may not be detained for any purpose longer than is necessary to bring him before a judge, and we have not deviated from that position. In this case, the homicide occurred late in the evening of June 8, and the appellant was taken before a judge on the next day.

The appellant also cites *Lane v. State*, Okl.Cr., 558 P.2d 1204 (1977), but that case is not precisely in point. In *Lane*, officers extracted a statement from the defendant without his parents being present, and we held the admission of the statement to be error. In the instant case, the appellant's father was present when the appellant made his statement. This assignment of error is, therefore, without foundation.

■ Next, the appellant urges that it was error to admit into evidence State's Exhibit Nos. 1 and 2, which are photographs depicting the interior of the appellant's car with a pistol on the transmission tunnel. The appellant and his father both executed a "consent to search" form, but he now maintains that the consent was not

---

1. The present statute is 10 O.S.Supp.1977, § 1107. The amendments which were made do not change the statute with regard to the question raised here.

valid. Deputy Sheriff Randy Jackson testified that at the time he executed the form the appellant was "rather calm," but he did acknowledge the appearance of calm might, in fact, have been due to shock.

The appellant, in citing *Case v. State*, Okl.Cr., 519 P.2d 523 (1974), correctly asserts that the State must carry the burden of justifying a warrantless search, but in the instant case we find that the State met that burden. The appellant and his father were given the *Miranda* warnings and were read the consent to search form before they signed it. They did not appear to be confused. The appellant contends that his actions were the result of fright or despair, but there is nothing in the record to support that proposition. Nor does the fact that the appellant subsequently refused to give a formal statement contradict the voluntariness of the consent to search. All that can be said is that at some point in time the appellant and his father decided to consult an attorney before giving any further cooperation. This was within their rights but it does not negate what had transpired previously. The third assignment of error is not persuasive.

In his fourth assignment, the appellant attacks the finding of the trial court that he is not amenable to rehabilitation within the juvenile system. At the certification hearing, the District Supervisor for the Ninth Judicial District Court of Related Community Services testified for the state regarding the facilities available for juveniles within the Department of Institutions, Social and Rehabilitative Services. Although the supervisor was not personally acquainted with the juvenile, he stated that it was Department policy to recommend that a juvenile, without prior contact with the system, be given an opportunity for rehabilitation within the juvenile system. In addition, he testified that based on his experience, a person who committed a homicide would be more amenable to rehabilitation than would one who had committed a lesser crime. In addition, he stated that the average period of confinement for a juvenile at Helena was six months. The report of the DISRS caseworker who had done the study of the juvenile also recommended that the appellant be kept within the juvenile system since he had had no prior contacts with the law.

The State's other evidence with regard to the juvenile's rehabilitation was a letter from Dr. Loraine Schmidt, Chief of the Department of Forensic Psychiatry at Central State Hospital, Norman, Oklahoma, stating that the juvenile was able to distinguish between right and wrong and was capable of advising his attorney in his own defense.

The appellant and the prosecution stipulated that the principal at Rush Springs High School would testify that in his opinion the juvenile was a polite, mild mannered youth who had no serious disciplinary problems and who had an overall grade point average of 3.0 to 3.1. They also stipulated that the juvenile's three uncles, with whom he had spent from seven to ten days each since the incident for which he was charged, would testify that he was obedient, got along well with other family members, and was helpful. They would further testify that he was capable of functioning satisfactorily in a home environment. Finally, he introduced an affidavit from the juvenile's sophomore English teacher who said he was one of her nicest students, and that they had gotten along well in class without any problems.

At the end of the evidence at the certification hearing, the District Judge stated in part:

"   .   .   .   I am not satisfied with the testimony of Mr. Norwood and I am going to direct that this child be evaluated by our mental health clinic operated by Dr. Bruce Munro. I would like the District Attorney to send a letter to Dr. Munro for him to evaluate this child .   . I am taking this case under advisement pending the receipt of that report. .   . "

The report from Dr. Munro of the Grady County Health Department stated that the juvenile's prognosis was good with therapy. He stated that the juvenile felt guilt over

what he had done and that it was doubtful that the juvenile had planned to be deliberately harmful. Dr. Munro's recommendation was that the juvenile be kept within the juvenile system, specifically that he be given two years of psychotherapy under the direction of the Chief Psychologist of the Comanche County Guidance Clinic.

In addition to the letter from Dr. Munro, the appellant introduced a letter from a psychiatrist, a clinical psychologist and a behavior specialist of the Parkwood Clinic in Tulsa, Oklahoma. That letter stated that the juvenile was free of psychosis and antisocial tendencies. It further stated that it was unlikely that he would ever initiate or encourage any situation which might lead to physical violence. It stated that the juvenile court was the appropriate place to deal with the juvenile and that the public would be adequately protected with the juvenile in the juvenile system. The clinic recommended ongoing therapy of at least one visit a week for at least six months, and stated that "institutionalization at this point will needlessly imprint a behavior pattern that may well take years to rehabilitate." The clinic stated that the prognosis with therapy for the juvenile was good. The behavior specialist at the Parkwood Clinic wrote a separate letter which stated that to reinforce the idea in the juvenile that he was a criminal by sending him to Helena or putting him in the adult prison system might lead him to "live down" to his peer group expectations.

Finally, a report from a neuropsychiatrist who had been seeing the juvenile on a weekly basis for approximately a month was admitted. The report stated that the juvenile court was the proper agency to deal with the juvenile and that it could adequately provide protection to the public. The neuropsychiatrist stated that the prognosis for the juvenile's rehabilitation was good if he cooperated and continued therapy from one to two years.

In stating his findings of fact and conclusions of law, the District Court Judge stated that he had difficulty with the finding of whether the juvenile was amenable to rehabilitation, saying:

" . . . The only questions about that is—I believe it was Mr. Norwood's testimony on the question of whether a year or less than a year was sufficient time to allow the juvenile procedure to fully rehabilitate a person charged with this kind of crime."

In his written order, the Judge wrote in paragraph seven:

"That all evidence offered indicates the juvenile is amenable to reasonable rehabilitation by the use of procedures and facilities currently available to the Juvenile Court except for the relatively short time remaining before the juvenile attains the age of eighteen (18) years and contrary to the testimony of the State's witness that defendants in murder cases are often the best prospects for rehabilitation."

In considering all of the evidence, we think that the District Court's conclusion that the appellant should be certified because he was not amenable to rehabilitation was erroneous. As this Court said in *J.T.P. v. State,* supra, there is no presumption that a person who committed a serious offense is not amenable to rehabilitation. Furthermore, as the Judge pointed out in his order, the evidence with regard to prosecutive merit was conflicting and could lead to a conclusion either of premeditation or of self-defense.

While we have held in previous cases that it is not error for a court to consider department policy and the age of a child in determining the likelihood of rehabilitation (e. g., *Purnell v. State,* Okl.Cr., 561 P.2d 109 [1977]; *Matter of Sanders,* Okl.Cr., 564 P.2d 273 [1977]), we think that is not the issue here. Mr. Norwood's testimony was not based on any personal contact with or personal knowledge of the juvenile; he merely answered the question of how long on the average it took to rehabilitate someone. The question was vague, and his answer was vague. The testimony of all the experts who had had personal contact with the juvenile was that not only should he remain within the juvenile system but that

he should not be institutionalized with DISRS. The recommendations all were that he undergo psychotherapy for periods of time ranging from six months to two years. The appellant began psychotherapy on the 2nd of September, 1977, and will be nineteen on August 30, 1979. According to 10 O.S.Supp.1977, § 1102, the District Court has jurisdiction over a delinquent child until the child becomes nineteen years of age. Therefore, the Juvenile Division of the District Court would have control over the juvenile long enough for him to complete rehabilitation according to the longest period of time suggested. The finding of lack of amenability to rehabilitation must be based on substantial evidence. See, *J.T.P. v. State,* supra; *Calhoon v. State,* Okl.Cr., 548 P.2d 1037 (1976). Surely, if the trial judge thought there was not substantial evidence showing lack of amenability to rehabilitation before receiving the reports from the psychiatrists, psychologist, and behavior specialist, he could not have found that there was after receiving those reports. When there is not substantial evidence to support a finding of lack of amenability, an order stating that the juvenile is not amenable to rehabilitation cannot be sustained.

We therefore hold that the District Court's finding of nonamenability to rehabilitation within the juvenile system was not justified, and the order of the Juvenile Division of the District Court waiving jurisdiction over the juvenile and certifying him to stand trial as an adult is, accordingly, *REVERSED* and *REMANDED* to the Juvenile Division for further proceedings.

BUSSEY, P. J., dissents.

BRETT, J., concurs.